BLANK ROME LLP
Seth Lapidow, Esq.
Michael Rowe, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000 (Phone)
(212) 885-5001 (Fax)
E-mail: Lapidow@blankrome.com
       mrowe@blankrome.com
*Attorneys for plaintiff Showtime Networks Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X

Showtime Networks Inc.

              Plaintiffs,

     -against-

Top Rank, Inc.,

              Defendant.
------------------------------------ X

Civil Action No.:

**COMPLAINT**

Plaintiff Showtime Networks Inc. ("SNI"), by its attorneys, Blank Rome LLP, for its Complaint against defendant Top Rank, Inc. ("TRI"), hereby alleges, on knowledge as to its own conduct, and, on information and belief, as to all other matters, as follows:

## NATURE OF THE ACTION

1. On May 2, 2015, the boxing world tuned in to watch one of the most anticipated events in boxing history: a championship fight between Floyd Mayweather ("Mayweather") and Manny Pacquiao ("Pacquiao") for the WBC World welterweight, WBA Super World welterweight and WBO World welterweight titles. The 12-round fight resulted in a unanimous decision in favor of Mayweather. In the post-fight press conference, Pacquiao admitted that he had fought with an injury, and shortly thereafter, TRI and Pacquiao issued a press release confirming that Pacquiao had suffered an injury to his right shoulder during training. Subsequently, numerous putative class

action lawsuits were filed against Pacquiao, Mayweather and the promoters and networks associated with the event, generally alleging that Pacquiao had been injured in training prior to the fight, and that he and TRI had concealed his injury. SNI was named as a co-defendant in a small fraction of those lawsuits, none of which contained plausible allegations that SNI was aware that Pacquiao had suffered any shoulder injury prior to the fight. Indeed, some complaints that named SNI as a defendant alleged that SNI had exclusive access to Mayweather's camp, but not to Pacquiao. Ultimately plaintiffs agreed to dismiss SNI in part because it did not have exclusive access to Pacquiao before the fight.

2. Under an agreement among SNI, TRI and others, TRI was obligated to defend and indemnify SNI. But at the outset of these actions, it was manifest that SNI and TRI, which was alleged to have known of and concealed the pre-fight injury, had starkly different interests. And in the reasonable opinion of SNI's sophisticated counsel, SNI would be laboring under at least the potential of a conflict with TRI and likely an actual one in defending the myriad actions. At once, SNI demanded that TRI honor its contractual obligations to indemnify SNI and pay for SNI's own counsel to defend it in these actions because of the manifest potential conflict between them. TRI refused. TRI continued to refuse to accede to SNI's repeated demands and insisted that there was no conflict between them even though TRI knew that SNI was entirely unaware of the pre-fight injury to TRI's fighter, which TRI allegedly had concealed.

3. Accordingly, forging its own path, SNI's counsel obtained dismissal of the actions against it and SNI paid the legal fees and expenses for that defense in the face of TRI's obdurate refusal to honor its obligation of indemnity and to pay for SNI to have separate counsel. This Action now seeks, among other things, to recover those fees and expenses and the declaration that TRI has an ongoing duty to indemnify SNI and to pay any future legal fees and expenses charged by SNI's counsel.

## PARTIES

4. Plaintiff Showtime Networks Inc. ("SNI") is a Delaware Corporation with its principal place of business at 1633 Broadway, New York, New York 10019.

5. Defendant Top Rank, Inc. ("TRI") is a Nevada Corporation with its principal place of business at 748 Pilot Road, Las Vegas, Nevada 89119.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C.§ 1332 because there is complete diversity of citizenship among the parties and the matter in controversy exceeds $75,000. In addition, the parties agreed and consented "to jurisdiction and venue in the Southern District of New York ... and agree that any such action shall be brought in the United States District Court for the Southern District of New York ...."

## FACTUAL ALLEGATIONS

7. SNI, Home Box Office, Inc. ("HBO"), Mayweather Promotions, LLC ("MPL") and TRI entered into an Agreement (the "Agreement") dated effective as of February 18, 2015 concerning the televising and distribution of a scheduled twelve-round welterweight championship boxing match (the "Event") between Mayweather and Pacquiao that was to be held on May 2, 2015 at the MGM Grand Garden Arena in Las Vegas, Nevada.

8. TRI served as Pacquiao's promoter for the Event.

9. Pursuant to subparagraph 13(d) of the Agreement:

(d) TRI assumes liability for, and shall indemnify, defend, protect, save and hold harmless SNI, HBO and MPL and their respective partners, divisions, subsidiary and affiliated divisions and companies (and the officers, directors and affiliates thereof), and the distributors, assigns, licensees and the respective shareholders, directors, officers, partners, employees and agents of the foregoing [the "Non-TRI Indemnified Parties"] from and against any and all Damages imposed on, incurred by or asserted against any of the Non-TRI Indemnified Parties arising out of any breach or alleged breach by TRI of any representation, warranty or covenant made, or from any obligation assumed, by TRI pursuant to this Agreement. The provisions of this subsection 13(d) shall apply, without limitation, to claims brought by any non-TRI

party against TRI in enforcing the terms of this Agreement, if and to the extent the non-TRI party is successful in asserting such claims.[1]

10.   Pursuant to subparagraphs 13(e)(i) and 13(e)(ii) of the Agreement:

(e)   In order to seek or receive indemnification in cases involving third-party claims:

(i)   the party seeking indemnification (the "Indemnitee") must have promptly notified the other (the "Indemnitor") of any claim or litigation of which it is aware to which the indemnification relates (the "Asserted Liability")(provided that the failure or delay in notification shall not relieve the Indemnitor of its obligations hereunder except to the extent that such obligations are increased by such delay or failure) such notice to describe the Asserted Liability in reasonable detail;

(ii)   with regard to any Asserted Liability, including any claim or litigation relating to an Asserted Liability to which the Indemnitor itself is not a party, the Indemnitor shall compromise or defend, at its own expense and by its own counsel, any such Asserted Liability and the Indemnitee shall cooperate, at the expense of the Indemnitor, in the compromise of, or defense against, such Asserted Liability. If the Indemnitor fails to so defend and indemnify as herein provided or contests its obligation to indemnify under this Agreement, the Indemnitee may (without prejudice to any of its rights hereunder) pay, compromise or defend such Asserted Liability. Notwithstanding the foregoing, neither the Indemnitor nor the Indemnitee may settle or compromise any claim over the objection of the other; provided, however, that consent to settlement or compromise shall not be unreasonably withheld. In any event, the Indemnitee and the Indemnitor may participate, at their own expense, in the defense of such Asserted Liability. _**Notwithstanding the foregoing, any Indemnitee shall have the right to employ separate counsel at the Indemnitor's expense and to control its own defense of such Asserted Liability if, in the reasonable opinion of counsel to such Indemnitee a conflict or potential conflict exists between the Indemnitee and the Indemnitor that would make such separate representation advisable**_; provided, however, that in no event shall the aggregate attorneys' fees and expenses payable by the Indemnitor for the Indemnitee's counsel in any one legal action or group of related legal actions exceed one hundred fifty percent (150%) of the aggregate attorneys' fees and expenses charged to the Indemnitor by its counsel in the same legal action or group of legal actions; provided, further, that the fees and expenses charged to the Indemnitor by its counsel shall be in accordance with said counsel's customary billing and expense practice and procedure and shall not be subject to offset or credit from any other matter in which said counsel is representing the Indemnitor. If the Indemnitor is defending against an Asserted Liability, upon its Indemnitor's request therefor, the Indemnitee shall make available to the Indemnitor any books, records

---

[1] "Damages" is defined in subparagraph 13(a) of the Agreement "as any and all claims, actions, suits, costs, liabilities, judgments, obligations, losses, penalties, expenses or damages (including, without limitation, reasonable, outside legal fees and expenses and all costs of investigation) of whatsoever kind and nature."

or other documents within its control that are necessary for such defense. (emphasis added).

11. The Event took place on May 2, 2015, and was criticized by the press based upon Pacquiao's performance and resulted in a 12-round unanimous decision in favor of Mayweather.

12. Following the Event, TRI and Pacquiao released a statement that TRI was aware that Pacquiao had sustained an injury to his right shoulder during his training prior to the Event and that the Nevada Athletic Commission (the "NAC") had denied his request for medication for his injury on the day of the Event.

13. On May 4, 2015, two days after the Event, one of Pacquiao's doctors, Dr. Neal ElAttrache, stated that Pacquiao had sustained a "significant tear" of his rotator cuff in his right shoulder prior to the Event and would require nine to twelve months of rehabilitation.

14. The lawsuits also alleged that on the same day, Dashon Johnson, a Pacquiao sparring partner, stated in a Facebook post that Pacquiao's sparring partners were sent home in April and were told to keep Pacquiao's injury a secret:

> We were asked not to mention anything to anyone but yes, **_Manny got hurt during camp with his right shoulder and it was messed up pretty bad!_** So bad his sparring partners including myself were asked to go home a few weeks out before the actual fight, which means a lot of work he could have put in for this fight was brought to a halt due to the fact that he could not spar really anymore and didn't want to mess it up more than he already had. (emphasis added).

15. Beginning on May 5, 2015, a number of putative class action lawsuits were filed across the country against SNI, HBO, TRI and MPL (the "Lawsuits"), asserting, among other things, claims for consumer protection violations, unjust enrichment, negligent misrepresentation, and conspiracy: (i) *Alessi v. Top Rank, Inc.*, No. 2:15-cv-06585-RGK-PLA (D. Conn. filed May 7, 2015); (ii) *Braunstein v. Top Rank, Inc.*, No. 2:15-cv-06607-RGK-PLA (S.D.N.Y. filed May 6, 2015); (iii) *Bynum v. Top Rank, Inc.*, No. 2:15-cv-06574-RGK-PLA (E.D.N.Y. filed May 22, 2015); (iv) *Constantino v. Top Rank, Inc.*, No. 2:15-cv-06533-RGK-PLA (S.D. Cal. filed May 7, 2015); (v) *Gomez v. Top Rank,*

*Inc.*, No. 2:15-cv-06227-RGK-PLA (N.D. Ill. Amended complaint filed May 26, 2015); (vi) *Gordon v. Showtime Networks Inc.*, No. 2:15-cv-06662-RGK-PLA (E.D. Pa. filed May 6, 2015); (vii) *Jimenez v. Top Rank, Inc.*, No. 2:15-cv-06615-RGK-PLA (S.D.N.Y. filed May 14, 2015); (viii) *Miller v. Top Rank, Inc.*, No. 2:15-cv-06588-RGK-PLA (S.D. Fla. filed May 8, 2015*)*; (ix) *Lake v. Top Rank, Inc.*, No. 2:16-cv-00876-RGK-PLA (E.D. Mo. filed Oct. 26, 2015); (x) *Natal v. Top Rank, Inc.*, No. 2:15-cv-06573-RGK-PLA (E.D.N.Y. filed May 12, 2015); (xi) *Nazario v. Top Rank, Inc.*, No. 2:15-cv-06564-RGK-PLA (D.N.J. filed May 12, 2015); (xii) *Schofield v. Showtime Networks, Inc.*, No. 2:15-cv-06562-RGK-PLA (D.N.J. filed June 26, 2015); and (xiii) *Villasenor v. Showtime Networks Inc.*, No. 2:15-cv-06567-RGK-PLA (D.N.M. filed July 24, 2015).[2] SNI was named as a co-defendant in only 12 of the approximately 42 lawsuits filed and later consolidated into the MDL Consolidated Case.

16. The gravamen of the Lawsuits is that Pacquiao was not ready to participate in the Event to the best of his ability because he had seriously injured his shoulder in early April 2015, and that defendants failed to disclose this information to the public. By way of example:

- "Defendants were fully aware that, without notice of the existence of this injury, purchasers of pay-per-view showings of the Fight would naturally believe -- as they had been lead to believe -- that they were purchasing the right to see a contest between highly-conditioned, healthy athletes in peak physical condition."

- "The high priced value that consumers placed on the Fight was premised on the fact that they were lead to believe that both contenders where [sic] fit, healthy, and able to perform to the full extent of their abilities."

- "This includes the omission of a material fact that, prior to and at the time of the Match, Defendant Pacquiao has suffered a severe injury to the rotator cuff of his right shoulder which had deprived him of the effective use of his right arm."

- "None of the Defendants informed or apprised the public or even the Nevada Athletic Commission about the injury to Defendant Pacquiao prior to moments before the event."

---

[2] The Lawsuits -- and other similar cases -- were transferred for purposes of multi-district litigation to the Honorable R. Gary Klausner of the United States District Court, Central District of California, *In Re Pacquiao-Mayweather Boxing Match Pay-Per-View Litigation*, MDL NO. 2-15-ml-02639-RGK (PLAx) (the "MDL Consolidated Case").

- "Defendants concealed and omitted to make any disclosure of their intent to illegally and wrongfully fail to disclose the injury to Defendant Pacquiao, an act that violated the agreed rules and conditions of the NAC and the Fight contract."

- "Defendants failed to disclose Defendant Pacquiao's shoulder injury to the NAC prior to the fight as required by Nevada law."

- "None of the Defendants informed or apprised the public about the injury to Defendant Pacquiao."

- "[Defendants] Failed to determine and disclose, when it [they] knew or should have known, that Pacquiao had injured his right shoulder during the training to the extent that it has to be evaluated and examined, including but not limited to an MRI and cortisone injection."

17. Many of the Lawsuits also attach as an exhibit a Pre-Fight Medical Questionnaire filled out by Pacquiao on May 1, 2015, in which Pacquiao attested "under penalty of perjury" that, among other things, he did not have "any injury to … shoulders, elbows, or hands that needed evaluation or examination …."

18. The Lawsuits' allegations regarding Pacquiao's pre-fight injury and TRI's conduct, if true, would constitute a breach by TRI of the Agreement, including but not limited to subparagraph 11(j) of the Agreement.

19. Subparagraph 11(j) of the Agreement provides:

(j) Promoters [TRI and MPL] shall use their best reasonable efforts to ensure that the fighters participating in the Event are and shall be ready, willing and able to participate in the Event to the best of their ability, and shall honestly compete and give an honest exhibition of skills and Promoters shall promptly inform Networks [SNI and HBO] if it believes that such is not the case … as between MPL and TRI, MPL shall be solely responsible for the actions and inactions of Mayweather and TRI shall be solely responsible for the actions and inactions of Pacquiao.

20. On May 15, 2015, SNI sent a letter to TRI providing prompt notice of the Lawsuits, describing in reasonable detail the claims asserted against SNI, and demanding indemnification and a defense from TRI pursuant to subparagraphs 13(d), 13(e)(i) and 13(e)(ii) of the Agreement. SNI also provided copies of the Lawsuits to TRI. SNI also notified TRI that SNI's counsel "is of the reasonable opinion that a potential conflict exists between SNI and TRI that would make separate

representation advisable to defend the Lawsuits." SNI also therefore requested that TRI confirm that it would pay for the expense of SNI "employing Weil, Gotshal & Manges LLP ("Weil") to defend the Lawsuits, such that SNI may control its own defense of the Lawsuits, pursuant to subparagraph 13(e)(ii) of the Agreement."

21. On May 22, 2015, after TRI failed to respond to SNI's May 15th letter, SNI sent a follow-up letter, requesting a response to SNI's demand for indemnification and reimbursement for defense by separate counsel.

22. On May 26, 2015, TRI sent a letter to SNI offering to make the services of O'Melveny & Myers LLP ("OMM") available to SNI for a period of time and subject to certain restrictions. But TRI refused to acknowledge SNI's right to control its own defense of the Lawsuits in the face of the manifest potential conflict and improperly refused to agree to pay for Weil to defend SNI in the Lawsuits.[3]

23. On May 28, 2015, SNI, by letter to TRI, reiterated that the "plain language of section 13(e)(i) of the Agreement grants SNI the right to employ separate counsel and control its own defense at TRI's expense where, as here, a conflict or potential conflict makes separate representation advisable." In support of its reasonable opinion that a potential conflicts exists between SNI and TRI, SNI pointed to at least five notable potential conflicts of interest: (i) SNI and TRI disagreed on which transferee court to propose to the Judicial Panel on Multidistrict Litigation ("JPML"); (ii) TRI was the clear target of all the plaintiffs' claims; (iii) SNI, unlike TRI, had the opportunity to be dismissed from the Lawsuits; (iv) SNI and TRI were differently situated with respect to TRI's alleged pre-fight knowledge of Pacquiao's shoulder injury, which could affect positions taken in future written and oral advocacy; and (v) the existence of an obvious potential

---

[3] HBO is also represented in the Lawsuits by OMM. Mayweather and MPL, however, retained separate counsel.

conflict to the extent SNI determined it should propound discovery on TRI regarding its alleged pre-fight knowledge.[4]

24. Failing to acknowledge that SNI's counsel had formed the reasonable opinion that ***potential conflict*** existed between SNI and TRI, on June 3, 2015, TRI responded to SNI that TRI disagreed that "there is a conflict that requires SNI to have separate counsel" and proposed that SNI and TRI continue to be represented by their own counsel, with TRI taking the lead on all matters where TRI's and SNI's interests were aligned, but that SNI's counsel should take the lead on any matter that advances solely SNI's position. TRI insisted, contrary to the plain terms of the Agreement, that TRI's duty to provide separate counsel for SNI is only triggered where TRI's counsel agrees that an actual conflicts exists between SNI and TRI and that no actual conflict existed between SNI and TRI that would make separate representation advisable. Even though the Agreement does not require TRI's counsel to agree that an actual or potential conflict exists, it is significant that TRI itself acknowledges, in this letter, that SNI's and TRI's interests are not "aligned".

25. On July 15, 2015, SNI explained, by letter to TRI, that under the express terms of the Agreement, it "makes no difference whether TRI believes there is a conflict; what matters is whether '***in the reasonable opinion of counsel to such Indemnitee*** a conflict ***or potential conflict*** exists between Indemnitee and Indemnitor that would make such a separate representation ***advisable***.' (emphasis added)." SNI also highlighted additional potential conflicts between TRI and SNI, explaining that while the defense group agreed to refrain from disparaging the preferred transferee forum of the other defendants in their briefs to the JPML, TRI nevertheless argued against the District of Nevada -- SNI's first choice for the transferee venue -- rather than just for the

---

[4] SNI explained that this "is a non-exhaustive illustrative list of current conflicts or potential conflicts, and SNI's investigation into these matters is ongoing and accordingly SNI reserves its rights to identify any additional applicable conflicts or potential conflicts." SNI also identified additional breaches of the Agreement, including but not limited to subparagraphs 3(a)(i), 3(a)(ii), 3(b), 11(a), 11(d) and 11(j) of the Agreement.

Central District of California, and while certain plaintiffs argued that SNI does not belong in the MDL, TRI argued that SNI belonged in the case, at least for pre-trial coordination.

26. On August 17, 2015, TRI again explained that it disagreed that there is a "conflict that requires SNI to have separate counsel" and again proposed that the parties continue to be represented by their own counsel, with TRI taking the lead on all matters where SNI's and TRI's interests were aligned, but that SNI's counsel should take the lead on any matter that advances solely SNI's position -- again, implicitly if not explicitly acknowledging that SNI and TRI had conflicting interests.

27. In response, on August 26, 2015, SNI, again by letter to TRI, explained the potential conflict to TRI. SNI explained that the mere fact that SNI and TRI were differently situated with respect to alleged pre-fight knowledge of the injury to Pacquiao's shoulder created a potential conflict between SNI and TRI. SNI, for example, noted that while it might well be in SNI's interest to prominently highlight in a court filing that SNI never had the requisite knowledge to fill out any NAC form "concerning the status of Pacquiao's alleged injury, and only TRI or Pacquiao could have made an error on the form," TRI would likely not support such a strategy.

28. SNI also explained that TRI's statement that SNI "would have no need to propound discovery as to [TRI's] and Pacquiao's 'pre-fight knowledge' [of the injury]" proves the existence of a potential conflict, because it demonstrates that TRI "would either refuse to make arguments based upon SNI's lack of pre-fight knowledge concerning Pacquiao's injury or, at the very least, would not do so zealously." SNI also pointed out that "should certain facts come to light concerning Pacquiao's or TRI's pre-fight knowledge of the alleged injury, SNI would run the risk of being tainted by those facts were it represented by the same attorneys."

29. SNI also indicated that it would be submitting invoices to TRI "for Weil's legal fees and costs incurred to date, and will continue submitting additional invoices" and that "[t]he only

basis under the Agreement to object to the fees is if these fees amount to more than 150% of the legal fees charged to TRI by its counsel." The invoices were reviewed by SNI's sophisticated in-house counsel, were found to be reasonable and were paid in full by SNI. Starting with a letter dated September 4, 2015, and continuing thereafter, SNI has submitted the invoices paid by SNI for Weil's legal fees and costs incurred to date, as well as two invoices for Bryan Cave LLP ("BC"), which served as local counsel on behalf of SNI in two of the matters in Missouri and Illinois, to TRI for reimbursement. TRI has failed to reimburse SNI for the amounts paid by SNI and reimbursement of the invoices remains outstanding. As of May 12, 2016, $682,754.07, including interest, remains unpaid by TRI and due to SNI.[5]

30. By letter, on October 4, 2015, TRI reiterated to SNI that TRI disagreed that a conflict existed that would require separate representation and, for the first time, over five months after the filing of the Lawsuits, and contrary to its protestations of unity, threatened "to assert its own claims for indemnity against Showtime." In support of this threat, TRI contended that: (i) "in paragraph 12(a), Showtime represented and warranted to Top Rank that none of Showtime's 'publicity' or 'other materials furnished or disseminated' by Showtime in connection with the May 2, 2015 bout between Floyd Mayweather and Manny Pacquiao would give rise to any claim of unfair competition or any similar claims or violate any other applicable law"; (ii) "[s]ome of the Pacquiao Class Action complaints contained allegations that, if true, would constitute a breach of Showtime's representations and warranties under paragraph 12 (and perhaps others)"; and (iii) "[t]he complaints go on to allege that the conduct of Showtime violated [unfair competition laws] ... because Defendants were in a position to actually know ... that Mr. Pacquiao was far from in promised fighting condition ...." The very fact that TRI would even threaten to assert, and go on to enumerate, specific counterclaims against SNI is clear evidence that a "potential conflict exists

---

[5] SNI explained to TRI that "these bills have accumulated interest until payment -- at a rate of 9% annually [and will continue to accrue such interest until payment], pursuant to CPLR 5001."

between" SNI and TRI that triggers SNI's right to employ separate counsel at TRI's expense, pursuant to subparagraph 13(e)(ii) of the Agreement. In any event, the allegations TRI cited in support of its threatened counterclaims were subsequently dropped from the amended complaints in the MDL Consolidated Case.

31. The potential and actual conflict between SNI and TRI was further demonstrated during the drafting of the MDL Consolidated Case Status Conference Report to be filed before the first court conference. The initial draft report prepared by OMM either omitted completely or gave short shrift to several key arguments that SNI had strenuously urged be advanced at the earliest possible stage of the litigation, including but not limited to that: (i) many cases did not even name SNI as a defendant because there was no basis to do so; (ii) the cases that named SNI failed to include any specific allegations concerning SNI's alleged pre-fight knowledge of Pacquiao's injury; (iii) consumers who bought the pay-per-view fight through cable or satellite providers, and are subject to arbitration clauses barring class action lawsuits, cannot assert claims against SNI; and (iv) many of the various state law claims were not cognizable under applicable law. SNI was forced to insist that these arguments, which benefited SNI, be included.

32. Moreover, when plaintiffs' counsel objected to the length of defendants' summary of their forthcoming motion to dismiss arguments in the initial draft report, OMM was quick to agree with plaintiffs and suggested that SNI dramatically pare back that section and, in particular, remove relevant case law, which supported SNI's defenses to the Lawsuits. SNI refused, as it viewed these arguments as critical to the initial positioning of the case.

33. As a result, Weil had to spend significant time reviewing and revising the initial draft report in order to ensure that SNI's legal arguments and defenses were prominently and adequately advanced to the Court. OMM's repeated reluctance to include SNI's arguments resulted in increased Weil fees and further evidenced the conflict between SNI and TRI.

34. As another example, OMM was designated to coordinate with plaintiffs' counsel and attempt to negotiate for the stipulated dismissal of SNI from the Lawsuits. Upon information and belief, OMM either made no such attempts, or was unsuccessful in any such attempts. Accordingly, Weil was forced to act on its own and engage directly with plaintiffs' counsel to seek dismissal on behalf of SNI. Weil's efforts were ultimately successful. On February 15, 2016, Judge Klausner entered an order in the MDL Consolidated Case dismissing without prejudice all claims asserted against SNI on the basis that SNI "did not have access to Defendant Pacquiao or Defendant Pacquiao's training camp prior to the start of the Mayweather-Pacquiao boxing match held on May 2, 2105 in Las Vegas Nevada other than access to them through one scheduled sit-down interview and public events, such as media events, and was unaware that Defendant Pacquiao had suffered any shoulder injury at all times between April 1, 2015, and the start of the boxing match on May 2, 2015."

35. The order also provides that: (i) "Plaintiffs may file new claims against SNI only if (a) Plaintiffs have a good faith basis to file new claims based on evidence that is not currently known or in the public domain, and (b) at least one other party that is currently named as a defendant remains a party to the Action"; and (ii) "If the current stay of discovery in the Action is lifted, SNI, through counsel, will accept service of subpoenas for documents and a corporate deposition."

36. On or about February 22, 2016, plaintiffs filed their consolidated complaints in the MDL Consolidated Case. The consolidated complaints do not name SNI as a defendant and no longer allege that SNI knew about or failed to disclose Pacquiao's pre-fight injury.

37. Even in the face of the dismissal of the claims against SNI and the fact that the consolidated complaints in the MDL Consolidated Case no longer allege that SNI knew about or failed to disclose Pacquiao's pre-fight injury, TRI continues to refuse to honor its contractual obligations and to pay for the separate defense of SNI.

## COUNT ONE
### (DECLARATORY JUDGMENT CONCERNING
### SNI'S CLAIM FOR INDEMNITY AGAINST TRI)

38. SNI incorporates by reference, as if fully set forth herein, each allegation of paragraphs 1 through 37 and makes them a part hereof as though set forth more particularly herein.

39. There is a substantial controversy between SNI and TRI, and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40. A declaratory judgment determining that TRI is obligated to indemnify and defend SNI with separate counsel as required under the Agreement is necessary to resolve the claim between SNI and TRI.

41. SNI and TRI entered into the Agreement concerning the televising and distribution of the Event.

42. Pursuant to subparagraph 13(d) of the Agreement, TRI is contractually obligated to "indemnify, defend, protect, save and hold harmless" SNI "from and against any and all Damages imposed on, incurred by or asserted against" SNI "arising out of any breach or alleged breach by TRI of any representation, warranty or covenant made, or from any obligation assumed, by TRI" pursuant to the Agreement.

43. Pursuant to subparagraph 13(e)(ii) of the Agreement, SNI "shall have the right to employ separate counsel at the Indemnitor's [TRI's] expense and to control its own defense of such Asserted Liability if, in the reasonable opinion of counsel to such Indemnitee [SNI]... a conflict or potential conflict exists" between TRI and SNI "that would make such separate representation *advisable* ...." (emphasis added).

44. The gravamen of the Lawsuits is that Pacquiao was not ready to participate in the Event to the best of his ability because he had seriously injured his shoulder in early April 2015, and that defendants failed to disclose this information to the public.

45. The Lawsuits' allegations regarding Pacquiao's pre-fight injury and TRI's conduct, if true, would constitute a breach by TRI of the Agreement, including but not limited to subparagraph 11(j) of the Agreement.

46. SNI provided TRI prompt notice of the Lawsuits and described in reasonable detail the claims asserted against SNI and notified TRI that SNI's counsel "is of the reasonable opinion that a potential conflict exists between SNI and TRI that would make separate representation advisable to defend the Lawsuits." SNI also requested that TRI confirm that it would pay for the expense of SNI employing separate counsel to defend the Lawsuits, such that SNI could control its own defense of the Lawsuits.

47. TRI improperly refused to agree to pay SNI for employing Weil and for other legal fees to defend the Lawsuits, such that SNI could control its own defense of the Lawsuits, based upon TRI's mistaken belief that TRI's duty to indemnify SNI with separate counsel is only triggered where TRI's counsel agrees that actual conflicts exist and TRI's erroneous opinion that no conflicts exist that would make separate representation advisable.

48. SNI is entitled to a declaratory judgment that: (i) TRI is obligated to indemnify and defend SNI in connection with the Lawsuits; (ii) SNI has the right to employ separate counsel, including Weil and BC, at TRI's expense based upon the reasonable opinion of SNI's counsel that a conflict or a potential conflict exists between SNI and TRI that would make such separate representation advisable; (iii) as of May 12, 2016, TRI is obligated to pay SNI $682,754.07, including interest, for Weil's and BC's past legal fees and costs in connection with the Lawsuits; (iv) TRI is obligated to pay SNI for any future Weil and other legal fees and costs that SNI pays in connection

with the Lawsuits; and (v) TRI is obligated to indemnify and defend SNI in the future, and pay for SNI's separate counsel, if plaintiffs either assert new claims against SNI in the MDL Consolidated Case or serve discovery, including any third-party discovery, upon SNI in the MDL Consolidated Case.

## COUNT TWO
### (DECLARATORY JUDGMENT CONCERNING TRI'S CLAIM FOR INDEMNITY AGAINST SNI)

49. SNI incorporates by reference, as if fully set forth herein, each allegation of paragraphs 1 through 48 and makes them a part hereof as though set forth more particularly herein.

50. There is a substantial controversy between SNI and TRI, and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

51. A declaratory judgment determining that TRI's indemnification claim against SNI is not a valid claim within the meaning of the Agreement is necessary to resolve the claim between SNI and TRI.

52. SNI is entitled to a declaratory judgment that SNI is not obligated to indemnify and defend TRI under the Agreement in connection with the Lawsuits for the reasons set forth in detail above, including but not limited to: (i) SNI did not breach the Agreement because it did not know about Pacquiao's shoulder injury prior to the Event; (ii) TRI cannot assert an indemnification claim against SNI because SNI is no longer a defendant in any of the Lawsuits; (iii) TRI cannot assert an indemnification claim against SNI because the consolidated complaints in the MDL Consolidated Case no longer allege that SNI knew about or failed to disclose Pacquiao's pre-fight injury; and (iv) TRI failed to notify SNI, in accordance with subparagraph 13(e)(i) of the Agreement, of any claim or litigation of which TRI was aware to which such indemnification would relate.

## COUNT THREE
### (BREACH OF CONTRACT)

53. SNI incorporates by reference, as if fully set forth herein, each allegation of paragraphs 1 through 52 and makes them a part hereof as though set forth more particularly herein.

54. SNI and TRI entered into the Agreement concerning the televising and distribution of the Event.

55. Subparagraph 13(d) of the Agreement provides that TRI is contractually obligated to "indemnify, defend, protect, save and hold harmless" SNI "from and against any and all Damages imposed on, incurred by or asserted against" SNI "arising out of any breach or alleged breach by TRI of any representation, warranty or covenant made, or from any obligation assumed, by TRI" pursuant to the Agreement.

56. Subparagraph 13(d) of the Agreement further provides that "[t]he provisions of this subsection 13(d) shall apply, without limitation, to claims brought by any non-TRI party against TRI in enforcing the terms of this Agreement, if and to the extent the non-TRI party is successful in asserting such claims."

57. Subparagraph 13(e)(ii) of the Agreement provides that SNI "shall have the right to employ separate counsel at the Indemnitor's [TRI's] expense and to control its own defense of such Asserted Liability if, in the reasonable opinion of counsel to such Indemnitee [SNI]... a conflict or potential conflict exists" between TRI and SNI "that would make such separate representation advisable ...."

58. The gravamen of the Lawsuits is that Pacquiao was not ready to participate in the Event to the best of his ability because he had seriously injured his shoulder in early April 2015, and that defendants failed to disclose this information to the public.

59. The Lawsuits' allegations regarding Pacquiao's pre-fight injury and TRI's conduct, if true, would constitute a breach by TRI of the Agreement, including but not limited to subparagraph 11(j) of the Agreement.

60. SNI provided TRI prompt notice of the Lawsuits and described in reasonable detail the claims asserted against SNI and notified TRI that SNI's counsel "is of the reasonable opinion that a potential conflict exists between SNI and TRI that would make separate representation advisable to defend the Lawsuits." SNI also requested that TRI confirm that it would pay for the expense of SNI employing separate counsel to defend the Lawsuits, such that SNI could control its own defense of the Lawsuits.

61. TRI improperly refused to agree to pay SNI for employing Weil and BC to defend the Lawsuits, such that SNI could control its own defense of the Lawsuits, based upon TRI's mistaken belief that TRI's duty to indemnify SNI with separate counsel is only triggered where TRI's counsel agrees that actual conflicts exist and TRI's erroneous opinion that no conflicts exist that would make separate representation advisable.

62. TRI has materially breached the Agreement by not complying with its indemnity obligations.

63. SNI has fully complied with its obligations under the Agreement.

64. As a direct and proximate result of TRI's material breach, SNI has suffered and continues to suffer damages, including but not limited to legal fees and expenses incurred by SNI in connection with this Action to enforce SNI's rights under the Agreement.

**WHEREFORE**, plaintiff Showtime Networks Inc. respectfully demands judgment against defendant Top Rank, Inc. as follows:

(a) **Count One**: a declaration that: (i) TRI is obligated to indemnify and defend SNI in connection with the Lawsuits; (ii) SNI has the right to employ separate counsel, including Weil and BC, at TRI's expense based upon the reasonable opinion of SNI's counsel that a conflict or a potential conflict exists between SNI and TRI that would make such separate representation advisable; (iii) as of May 12, 2016, TRI is obligated to pay SNI $682,754.07, including interest, for Weil's and BC's past legal fees and costs in connection with the Lawsuits; (iv) TRI is obligated to pay SNI for any future Weil and other legal fees and costs that SNI pays in connection with the Lawsuits; and (v) TRI is obligated to indemnify and defend SNI in the future, and pay for SNI's separate counsel, if plaintiffs either assert new claims against SNI in the MDL Consolidated Case or serve discovery upon SNI in the MDL Consolidated Case; and

(b) **Count Two**: a declaration that SNI is not obligated to indemnify and defend TRI in connection with the Lawsuits under the Agreement; and

(c) **Count Three**: damages in an amount to be determined at trial, including but not limited to legal fees and expenses incurred by SNI in connection with this Action to enforce SNI's rights under the Agreement; and

(d) damages in an amount to be determined at trial, together with legal fees and expenses and such other and further relief as the Court deems just and reasonable.

Dated: New York, New York
May 25, 2016

BY: /s/ Seth Lapidow
Seth Lapidow, Esq.
Michael Rowe, Esq.
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000 (Phone)
(212) 885-5001 (Fax)
E-mail: Lapidow@blankrome.com
mrowe@blankrome.com

*Attorneys for plaintiff Showtime Networks Inc.*